JOSEPH GREGG

v.

ILLINOIS CENTRAL RAILROAD COMPANY.

*Railroads—Storage of Uncalled-for Freight—Appeal and Error.*

1. A carrier storing uncalled-for goods, on which the freight has not been paid, should store in his own name in order to preserve his lien. Such carrier is not liable for any default of the warehouseman, if he was guilty of no negligence in selecting him.

2. The finding of the court in a case tried without a jury, upon conflicting evidence, will not be disturbed upon appeal.

[Opinion filed January 27, 1893.]

APPEAL from the Circuit Court of Cook County; the Hon. S. P. McCONNELL, Judge, presiding.

Messrs. OTIS & GRAVES, for appellant.

Mr. C. V. GWIN, for appellee.

MR. JUSTICE GARY. The appellant in July, 1888, shipped five car loads of corn to Augusta, Georgia, by the road of the appellee. By the bills of lading, the corn was consigned to the order of Joseph Gregg & Co., with directions to notify Dunbar & Co.

These bills were attached to drafts and indorsed to a bank

that discounted the drafts. The drafts were drawn on Dunbar & Co., at ten days' sight.

August 11, 1888, Dunbar & Co. wrote to the appellant thus: "No demand for grain to-day, market is so stocked. A large lot of stuff was brought here prior to the advance in freight, and this being our tightest season anyway, everybody has been cramped to pay for it; our banks protected drafts, and loaned on, until they, too, became cramped, and refused to lend any more. The situation is worse than last season, when you remember the same thing occurred. The best way we can get out of the difficulty in meeting your drafts, which begin to mature next week, is to draw back on you for them as they mature, and then let you make new ten day drafts on us, and in this way we can gain about fifteen or sixteen days, and in that time hope to place a great part of it.

We can arrange to take care of the stuff itself without having to keep on track. We will begin to draw on Monday. We await your favors. Yours truly,

DUNBAR & Co."

The appellant's counsel says this letter does not refer to the transactions involved in the suit, but we infer that the court below, where the case was tried without a jury, found that it did.

When the corn actually arrived in Augusta, does not appear, but it was there in the warehouse of Dunbar & Co., stored with them as warehousemen, on receipts to the Georgia R. R. Co., when, on the 10th day of September, 1888, an extraordinary flood came and destroyed it. The Georgia R. R. Co. seems to have been the last connecting road over which the corn was carried to Augusta.

The appellant sued the appellee for the value of the corn and alleges, first, that the Georgia R. R. Co. should have stored the corn in the elevator standing on the higher ground, and operated by parties of better financial standing than Dunbar & Co.

Whether there was room in that elevator was a controverted question on the trial, as well as whether the expense

would not have been greater. The record does not show that the danger from flood could have been anticipated, and so far as appears, there was no imprudence in intrusting the mere custody of the corn to Dunbar & Co.

Second. That the Georgia R. R. Co. should have notified the appellant of the arrival of the corn, and that it was not taken off the hands of the road by surrender of the bills of lading.

Of Dunbar & Co.'s inability, the appellant had notice by the letter of August 11th, whether it related to this corn or not; whether there was a custom to notify, was in dispute; and the direction of the bills of lading, to notify Dunbar & Co., might well be understood by the railroad company as being all that the appellant desired. And in fact if the letter of August 11th referred to this corn, the fair inference is that the very thing the appellant desired to have done with this corn, was done.

The third alleged ground of recovery is, that the corn might have been dried with but little loss. That was a part of the controversy upon which the finding of the court below, upon conflicting evidence, is conclusive.

There were presented to the court eight propositions, of which five were marked refused. What has been said, covers all of them but the last, which asserts that the grain, having been stored in the name of the Georgia R. R. Co., the appellee is liable for any negligence of Dunbar & Co. in trying to save the grain and in drying it.

A carrier, storing uncalled-for goods, on which the freight had not been paid, would naturally store in his own name, to preserve his lien. No authority is cited that he is wrong in so doing, or that he is liable for any default of the warehouseman, if he was guilty of no negligence in selecting him.

On the whole case there seems to be no error, and the judgment is affirmed.

*Judgment affirmed.*